Argued April 1; affirmed April 27, 1937

# YATES *v.* COCKERHAM ET AL.

(67 P. (2d) 269)

246

*John F. Conway*, of Portland (O. W. Eastham and W. B. Yates, both of Portland, on the brief), for appellant.

*E. R. Woods*, of Corvallis, for cross-appellants.

*Oscar Hayter*, of Dallas, for respondent New Grand Ronde Lumber Company.

*George P. Winslow*, of Tillamook, for respondents W. J. Riechers and First National Bank.

RAND, J.  On June 21, 1935, the plaintiff obtained judgment against J. C. Cockerham in the circuit court for Benton county and caused a writ of execution to be issued thereon. The execution was returned nulla bona. Plaintiff thereupon brought this suit in the nature of a creditor's bill, seeking to reach certain moneys alleged to be the property of Cockerham and to have them applied in satisfaction of the judgment. Shortly after the commencement of the suit, Cockerham died and his widow, Esther Cockerham, as executrix under his will, was substituted in his place as a defendant in this suit.

The moneys which the plaintiff seeks to have applied in satisfaction of his judgment are certain moneys alleged to have been due and payable by the New Grand Ronde Lumber Company, hereinafter referred to as the lumber company, to Cockerham's estate under a contract for the sale of timber, and also certain other moneys belonging to said estate alleged to have been wrongfully paid under said contract to the executor under the will of David Martiny, deceased.

The defendants Esther Cockerham, both individually and as executrix, Maude Eborall and Agnes Floyd, as assignee of Maude Eborall, filed a joint answer in the nature of a cross-complaint, setting up that the lumber company was also indebted to them in a large sum of money under the same contract for the sale of said timber and praying for a decree requiring payment thereof to them by said company. The cause proceeded to trial and a decree was entered, dismissing plaintiff's complaint with prejudice and also dismissing the cross-complaint with prejudice and awarding to the lumber company and to the executor under the will of David Martiny a judgment for the costs and disbursements of the suit. From this decree, the plaintiff and the cross-complainants have each appealed.

The transactions out of which these controversies arose are as follows:

On October 30, 1925, a joint contract was entered into by J. C. Cockerham, Esther Cockerham, Maude Eborall, David Martiny, and W. E. Furnish, as executor under the will of W. J. Furnish, deceased, as vendors, and C. L. Jensen, J. C. Jensen, J. J. Kostick, Ambrose Kostick, Alvin Kostick, Ralph Kostick and Pauline Kostick, as vendees, in and by the terms of which the vendors contracted to sell and the vendees

to purchase the merchantable timber then standing on some 880 acres of certain designated lands situated in Polk county, Oregon.

Subsequent to the making of this contract and before any of the timber had been cut or removed from the lands, the vendees assigned the contract and their rights and interests thereunder to said lumber company, and said lumber company has cut and removed all of said merchantable timber from said lands and claims to have paid to the vendors all sums or amounts payable under the contract.

At and prior to the time the contract was entered into, the lands covered by the contract were not jointly held by the vendors but were by them owned in severalty, and the vendors knew that, in order to market this timber, it should first be manufactured into lumber and that, to justify the expenditure of sufficient moneys to erect a sawmill, a considerable body of timber must first be acquired by the owners of the mill. For that reason, the several tracts of land separately owned by the vendors were pooled and a joint contract was entered into by them the same as if the lands had been held in joint ownership, and there was no provision contained in the contract as to the amount either or any of the vendors were to receive for the particular timber cut and removed from their individual lands. The contract merely provided that all the merchantable timber should be cut and removed as if held in one ownership and that the full consideration to be paid therefor should be deposited by the vendees in certain designated banks to the credit of the vendors jointly and be distributed to them by said banks in accordance with their directions.

Subsequently and on May 23, 1927, the vendors stipulated in a writing signed by all of them that all

proceeds from the sale of the timber should be distributed to them by the bank in which they were deposited in the following proportions: to Maude Eborall, 18.2331337 per cent; to David Martiny, 26.2243772 per cent, and to J. C. Cockerham, 55.5424991 per cent.

The contract for the sale of the timber states the consideration which the vendees were to pay for the timber and the manner of payment in these words:

"That the vendors for and in consideration of One Hundred Sixty-five Thousand Eight Hundred and Nineteen Dollars, gold coin of the United States of America, to be paid to them by the purchasers in manner and form herein after set forth and the further consideration of the covenants and agreements, hereinafter stated, to be observed and performed by the purchasers, and vendors agree to sell and convey to the purchasers, and the purchasers agree to buy all the merchantable timber on the following legally described lands; all of the said lands and timber being situated in the County of Polk, of the State of Oregon, more particularly described as follows, to-wit: * * *

"One purpose of the purchasers in buying said timber is to cut, manufacture, sell and remove the timber from the land herein described. The purchasers covenant and agree to pay the vendors for the said timber the total price of One Hundred sixty-five thousand eight hundred and nineteen Dollars, gold coin of the United States of America, Five thousand dollars, ($5,000.00) of which is paid at the execution and delivery of this contract and the receipt thereof is hereby acknowledged and the remainder the purchasers agree to pay in installments of not less than $3.50 per thousand feet, board measure, payable as shipped, settlement to be made on or before the 10th day of each calendar month for all the lumber marketed in the preceding calendar month until the whole sum of One Hundred sixty-five thousand eight hundred and nineteen dollars, is paid. It is understood that the marketing is complete when the lumber is delivered to the purchasers on the prem-

ises, or if shipped by rail, truck or otherwise, then, the market is complete when the bill of lading is issued therefor by the carrier.

"The purchasers shall furnish to the vendors on or before the 10th day of each calendar month a statement or statements for all lumber sold and money received for any lumber cut and sold by them in the preceding calendar month from the vendors timber, including all lumber sold locally or from the yard, or yards and hauled or carried away by the buyer thereof. Vendors shall give the purchasers credit on the gross amount for all money received therefrom.

"The purchase price of this timber as set forth in this contract and agreement, is known to all parties concerned to be $3.00 per thousand feet and the $.50 per thousand feet additional as herein provided, shall be applied on the full purchase price, known as the principal, and is to be paid at the same time the $3.00 payment, as herein provided for in the above paragraph in this contract.

"The purchasers agree to pay the entire purchase price of ——— thereon on or before the 30th day of October, 1935  *  *  *.

"Purchasers covenant and agree that they will deposit all bills of lading with draft attached thereto and all money received for lumber with the state bank at New Grand Ronde, Oregon, or state bank of Willamina, Oregon, as the same may be received and that the minimum payment of $3.00 per thousand feet board measure and the additional payment of $0.50 per thousand feet be transferred and deposited by the said bank or banks to the credit of the vendors as said money is received and the balance of all money received therefrom paid over to the purchasers herein mentioned.
*  *  *

"Vendors shall pay all taxes on timber and land for the year 1925 and the purchasers shall pay taxes on timber only, beginning in the year 1926 which is to be paid in two installments in the year 1927, and vendors shall pay all taxes on land at all times, but in case

it should be necessary for purchasers to pay any taxes on the lands, or on timber previous to year 1926, herein described the same shall be charged to the vendors with principal and interest thereon and said money shall be applied on the gross sum heretofore mentioned in this contract. * * *

"The life of this contract and agreement shall be for ten years but at the expirationof eight years from date hereof, purchasers agree that the full purchase price of all of said timber as therein provided shall be paid as follows: either by paying in a lump sum the balance due on the purchase price or at their option to pay an additional $.50 per thousand feet for all timber then unpaid for, same to be paid as timber is cut and sold in the manner herein before provided and in consideration of said lump payment or additional $.50 per thousand feet, the purchasers shall have an additional five years from the expiration of the ten year period, within which to remove the said standing timber from said lands herein before described but it is expressly understood and agreed that as to the price to be paid for the uncut timber standing at the expiration of eight years, in case purchasers shall elect to pay balance due at the end of the eight year period at the rate of $3.50 per thousand feet, the full amount of $3.50 per thousand feet shall be paid on or before the expiration of ten years from the date of this contract.

"It is further understood and agreed between the vendors and the purchasers herein named that when the full purchase price of the timber belonging to the vendors has been paid by the purchasers that were upon all timber then remaining on the lands herein described, shall be the sole and exclusive property of the purchasers and shall be removed by them within the time provided herein.

"Now after all conditions heretofore set forth in this contract have been fully complied with *it* (sic) by all parties concerned, time and manner being the essence thereof, and the gross price of One hundred sixty-five thousand eight hundred and nineteen dollars, has

been fully paid to the vendors as herein provided and the purchasers have completed their milling operation as herein provided and have completed the use of the vendors lands for right of ways as herein before provided, they shall within ninety days from that time remove all of their logging equipment and other machinery from the land of the vendors described herein and shall deliver to and relinquish all their claims to the said lands to the vendors as perfectly and completely as if this agreement had never been made.
\* \* \*''

■ Under the foregoing provisions of the contract, the plaintiff and the cross-complainants contend that the vendees are obliged to pay to the vendors the full purchase price of $165,819 regardless of what quantity of merchantable timber the lands would produce.

This contention cannot be sustained if effect is to be given to two of the provisions above quoted. In the first of these, the contract states that the purchase price is known to all parties concerned to be $3 per thousand feet and $.50 per thousand feet additional to be applied on the full purchase price and to be paid at the time the $3 payment is made. The second is that provision which expressly states that the life of the contract shall be for 10 years, but at the expiration of eight years from the date thereof the full purchase price shall be paid "either by paying in a lump sum the balance due on the purchase price or at their option to pay an additional $.50 per thousand feet for all timber then unpaid for, same to be paid as timber is cut and sold in the manner herein before provided", and "in case purchasers shall elect to pay balance due at the end of the eight-year period at the rate of $3.50 per thousand feet, the full amount of $3.50 per thousand feet shall be paid on or before the expiration of ten years from the date of this contract".

The evidence shows, and it is not contradicted, that the timber was all cut and removed and paid for at the price stipulated in the contract as originally entered into and as later modified before the expiration of 10 years from the date of the original contract.

Furthermore, the evidence shows that at the time this contract was entered into and during the time the timber was being cut and removed there was only 30,330,657 feet, board measurement, of merchantable timber on these lands. If this contention could be sustained, the price payable for the timber was not $3.50 per thousand feet as specified in the contract but would approximate $5.50 per thousand feet and this is in direct contradiction of the terms of the contract.

The evidence further shows that the timber had not been cruised and that the amount of merchantable timber on the lands was unknown to all the contracting parties when the contract was entered into and there was no evidence offered tending to show that the price contracted to be paid was less than the stumpage value of the timber at the time the contract was made. In fact, the evidence tends to show that the timber was of poor quality and of less value than the price fixed in the contract.

When this contract is read and considered as a whole, it seems obvious to us that it was the intention of the parties to make it optional with the purchasers whether to pay within eight years from the date of the contract the full sum of $165,819, or, if not paid within that time, to pay for the timber then remaining on the land at the rate of $3.50 per thousand feet and to require the same to be paid at that rate as the timber should be cut and removed and not later than 10 years from the date of the contract, and, since, the evidence

shows that all merchantable timber was cut and removed from the land within the eight-year period and was paid for in compliance with the terms of the contract, nothing remains due thereon from the lumber company.

■■ We find no merit in the contention of the plaintiff that the executor under the will of David Martiny, deceased, has received moneys belonging to the estate of J. C. Cockerham, deceased, which should be applied upon plaintiff's judgment. At the time Cockerham entered into the contract for the sale of timber, he was heavily involved in debt and part of the land held by him was encumbered by mortgage, and David Martiny was one of his principal creditors. On November 26, 1927, Cockerham and Martiny entered into a written contract between themselves in which it was recited that Cockerham owed Martiny a note for $7,500; another note for $3,500, and an additional amount of $7,839.88, and it was stipulated that for the first five million feet of timber which should be cut by the New Grand Ronde Lumber Company under the contract of October 30, 1925, Cockerham should receive all his share without being required to make any payment thereof to Martiny, and that, after being so paid, Cockerham should pay to Martiny $1 per thousand feet on all lumber cut and marketed from his share for a period of six months and thereafter $1.50 per thousand feet until his said indebtedness to Martiny had been paid in full. After crediting all moneys paid under the settlement agreement, a considerable sum still remains due and unpaid upon the Martiny account. It is true, as contended by plaintiff, that the executor under the will at one time offered to accept payment of a less sum than the amount due in satisfaction of the claim if paid within a stated

time, but this offer was not accepted nor has it been complied with. There was no dispute as to the amount of the claim, and, therefore, the offer to accept a less sum than the amount admitted to be due, if it had been accepted, would not have satisfied the entire debt without some other consideration being paid, as would have been the case had the amount then been in dispute and an agreement to compromise on a certain amount had been entered into.

■ Nor do we find any merit in the contention that, because a mortgage upon a part of the lands described in the contract of October 30, 1925, and belonging to Cockerham, has since been foreclosed by the executor under the will of David Martiny and bid in by such executor entitles the plaintiff to have a part of the moneys received by Martiny and his executor, under the contract for the sale of the timber, applied upon plaintiff's judgment. The evidence shows that, after the foreclosure and sale, the timber on the foreclosed lands was cut, removed and paid by the lumber company and the moneys were distributed the same as if no foreclosure had been had. The evidence further shows that the foreclosed lands, without the timber, are of but little value and that the transaction, together with all other sums paid, was wholly insufficient to satisfy Cockerham's indebtedness to Martiny.

The decree, therefore, will be affirmed but without costs to either party upon this appeal.